# United States Court of Appeals
## For the First Circuit

No. 22-1133

IN RE: EVENFLO COMPANY, INC., MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION,

MIKE XAVIER; LINDSEY BROWN; MARCELLA REYNOLDS; MONA-ALICIA
SANCHEZ; KEITH EPPERSON; CASEY HASH; JESSICA GREENSCHNER; LAUREN
MAHLER; EDITH BRODEUR; DAVID A. SCHNITZER; ASHLEY MILLER;
DANIELLE SARRATORI; HAILEY LECHNER; DESINAE WILLIAMS; ELISE
HOWLAND; THERESA HOLLIDAY; JOSEPH WILDER; AMY SAPEIKA; NAJAH
ROSE; SUDHAKAR RAMASAMY; TARNISHA ALSTON; EMILY NAUGHTON; TALISE
ALEXIE; HEATHER HAMPTON; LINDSEY REED; KAREN SANCHEZ; BECKY
BROWN; DEBORA DE SOUZA CORREA TALUTTO; KARYN ALY; JANETTE SMARR;
KARI FORHAN; JOSHUA KUKOWSKI; ANNA GATHINGS; KRISTIN ATWELL;
PENNY BIEGELEISEN; CARLA MATTHEWS; JILLI HIRIAMS; NATALIE DAVIS;
CATHY MALONE; JEFFREY LINDSEY; LINDA MITCHELL; RACHEL HUBER;
CASSANDRA HONAKER,

Plaintiffs, Appellants,

JANELLE WOODSON; DANA BERKLEY; JESSICA BLOSWICK; COLLEEN
CODERRE; GRETA ANDERSON; KRISTEN BRINKERHOFF; LINDA FEINFELD;
ANDREW GLADSTONE; GEORGETTE GLADSTONE; ELIZABETH GRANILLO; JANET
JUANICH; TERESA MUGA; ASHLEY PERRY; ANGELICA RUBY,

Plaintiffs,

v.

EVENFLO COMPANY, INC.,

Defendant, Appellee,

GOODBABY INTERNATIONAL HOLDINGS LIMITED,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

———————————

Before

Lynch and Selya, Circuit Judges,
and McElroy,[*] District Judge.

———————————

Jonathan D. Selbin, with whom Lieff Cabraser Heimann & Bernstein LLP, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Martha A. Geer, and Milberg Coleman Bryson Phillips Grossman, PLLC were on brief, for appellants.

Barbara A. Smith, with whom Dan H. Ball, Timothy J. Hasken, K. Lee Marshall, and Bryan Cave Leighton Paisner LLP were on brief, for appellee.

Philip S. Goldberg, Mark A. Behrens, Andrew J. Trask, and Shook Hardy & Bacon L.L.P. on brief for Juvenile Products Manufacturers Association, Chamber of Commerce of the United States of America, National Association of Manufacturers, and National Retail Federation, amici curiae.

———————————

November 23, 2022

———————————

———————————

[*]    Of the District of Rhode Island, sitting by designation.

**LYNCH**, <u>Circuit Judge</u>.  The district court dismissed the plaintiffs/appellants' operative complaint ("complaint") in this putative class action for lack of Article III standing.  <u>See</u> <u>In re Evenflo Co. Mktg., Sales Pracs. & Prods. Liab. Litig.</u>, No. 20-md-02938, 2022 WL 252331, at *1, *5-6 (D. Mass. Jan. 27, 2022).  The complaint alleges that the defendant, Evenflo Company, Inc. ("Evenflo"), made several misrepresentations about the safety and testing of its children's Big Kid car booster seat and that the plaintiffs bought the seat relying on those misrepresentations for use by their children and grandchildren (collectively, "children").  The complaint alleges that, but for Evenflo's misrepresentations, the plaintiffs would not have purchased the seat, would have paid less for it, and/or would have bought a safer alternative.  We refer to these three harms as "overpayment."  The complaint alleges that Evenflo's misrepresentations caused the plaintiffs to spend money that they otherwise would not have spent.  It does not allege that the plaintiffs' children were hurt while using the seat or that the product otherwise failed to perform.  The complaint raises a variety of state law claims and requests monetary, declaratory, and injunctive relief.

We hold that the plaintiffs' pleadings plausibly demonstrate their standing to seek monetary relief.  We also hold that the plaintiffs lack standing to seek declaratory and

injunctive relief.  We affirm in part, reverse in part, and remand for further proceedings.

I.

A.

We describe the facts as they appear in the plaintiffs' complaint.  Hochendoner v. Genzyme Corp., 823 F.3d 724, 728 (1st Cir. 2016).

The complaint asserts fifty-eight state law counts, including claims for fraudulent concealment, unjust enrichment, negligent misrepresentation, violations of various state consumer protection statutes, and breaches of implied warranties of merchantability under several other state statutes.  The plaintiffs seek to certify a nationwide class of "[a]ll persons in the United States . . . who purchased an Evenflo 'Big Kid' booster seat between 2008 and the [complaint's filing]," as well as subclasses for each state, the District of Columbia, and Puerto Rico, and request monetary, injunctive, and declaratory relief.

The complaint alleges that "the market for children's car safety seats is generally grouped around . . . three basic designs that track, sequentially, with children's growing weights and heights:  rear-facing seats, forward-facing seats with harnesses, and belt-positioning booster seats."  Evenflo manufactures and sells all three types of seats.  The plaintiffs' allegations concern the Big Kid booster seat, a model introduced

in the early 2000s and said to offer similar features to a booster seat sold by one of Evenflo's leading competitors but intended to sell for approximately $10 less.

The complaint focuses on two misrepresentations Evenflo allegedly made about the Big Kid on its website and packaging, in marketing materials, and in its product descriptions at major retailers between 2008 and 2020.

First, Evenflo represented the Big Kid as safe for children as small as thirty pounds. The complaint alleges that Evenflo was aware "[a]s early as 1992 . . . that booster seats were not safe for children under 40 pounds," based on a National Highway Traffic Safety Administration ("NHTSA") "flyer that was [then] pending approval." That flyer stated that a "toddler over one year of age, weighing 20 to 40 pounds, is not big enough for a booster." Further, "since the early 2000s, the [American Academy of Pediatrics ("AAP")] has advised that children who weigh 40 pounds or less . . . are best protected in a seat with its own internal harness." In 2011, both NHTSA and the AAP updated their guidances to reflect "that parents should keep their children in rear-facing child safety seats for as long as possible before transitioning them to forward-facing harnessed seats, and that switching children to booster seats [from forward-facing harnessed seats] at 40 pounds was no longer recommended." In 2012, "Evenflo's top booster seat engineer" delivered an internal

presentation that Evenflo should "modify[] the [Big Kid's] weight rating to 40 [pounds]" in order to "discourage early transitions to booster seats," which place younger children at an "increased risk of injury." A senior marketing director "vetoed" this weight recommendation; the same marketing executive also rejected another proposal to modify the weight limit later that year.

Second, the complaint alleges that Evenflo misrepresented that the Big Kid had been "side impact tested." Evenflo also stitched a "side impact tested" label onto the seats. Evenflo described its side impact testing on its website as meeting or exceeding federal standards and "simulat[ing] the government side impact tests conducted for automobiles."

The plaintiffs describe this side impact testing claim as "misleading at best." Between 2008 and 2020, NHTSA did not require or set a standard for side impact testing of booster seats. See 49 C.F.R. § 571.213 (setting requirements for child seats). The complaint alleges that NHTSA's side impact testing for vehicles incorporates two different tests, assessing the damage done to crash test dummies after (1) crashing "a 3,015 pound moving barrier . . . at 38.5 miles per hour into a standing vehicle" and (2) pulling "a vehicle angled at 75 degrees . . . sideways at 20 miles per hour into a 25 cm diameter pole at the driver's seating location." Evenflo's test was "performed by placing a product on a bench (resembling a car seat), moving that bench at 20 miles per

- 6 -

hour, then suddenly decelerating it." Evenflo considered a booster seat to have failed this test only if "(1) . . . a child-sized dummy escape[d] its restraint entirely, . . . or (2) the booster seat itself [broke] into pieces." An Evenflo technician "has stated that, in 13 years, he did not once perform a 'failed' side-impact test," and an Evenflo engineer "admitted under oath that, when real children move in [ways displayed by crash test dummies in tests considered successful by Evenflo], they are at risk for injurious head contact."

B.

The plaintiff Evenflo customers brought a number of suits against the company related to the Big Kid's marketing and safety in various federal district courts in early 2020. The Judicial Panel on Multidistrict Litigation centralized the actions and then transferred them to the District of Massachusetts in June 2020.

On October 20, 2020, the plaintiffs filed a consolidated amended class action complaint. This operative complaint names forty-three plaintiffs from twenty-eight states who purchased Big Kids for their children between 2010 and 2020. The complaint alleges that Evenflo's representations that the Big Kid was side impact tested and safe for children as small as thirty pounds were false or misleading. Three of the plaintiffs allegedly were involved in car accidents after purchasing the Big Kid, but none

seek recovery for any physical injuries, if there were any, to their children. Although the exact language varies over the course of the complaint, the complaint typically alleges that "[h]ad [the plaintiffs] known about the defective nature of Evenflo's Big Kid booster seat[], [they] would not have purchased the seat, would have paid less for it, or instead would have purchased one of many safer available alternatives."

On November 20, 2020, Evenflo moved to dismiss the complaint with prejudice. Evenflo argued that the plaintiffs lacked standing because they had not been injured by Evenflo's conduct, that the complaint failed to state a claim under Federal Rule of Civil Procedure 12(b)(6), and that the plaintiffs had not pleaded their fraud claims with the particularity required by Rule 9(b).

The district court concluded that the plaintiffs lacked standing and granted Evenflo's motion on January 27, 2022. See In re Evenflo, 2022 WL 252331, at *1, *5-6. The court reasoned that the plaintiffs had failed to establish any economic injury sufficient to pursue monetary relief because (1) the complaint did not allege that the seats failed to perform -- such that the plaintiffs had necessarily received the benefit of the bargain in purchasing them -- and (2) the plaintiffs had not plausibly shown that the seats were worth less than what they had paid for them or estimated their true value. See id. at *3-5. The court also

concluded that the complaint did not allege any likelihood of future injury sufficient to create standing to pursue injunctive relief. See id. at *5-6. The court did not address Evenflo's other arguments for dismissal, and it did not specify whether the dismissal was to operate with or without prejudice. See id. at *1, *6.

The plaintiffs timely appealed.

## II.

Article III of the Constitution limits "[t]he judicial Power" to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; see Kerin v. Titeflex Corp., 770 F.3d 978, 981 (1st Cir. 2014). "The existence of standing is a legal question, which we review de novo." Kerin, 770 F.3d at 981. "When reviewing a pre-discovery grant of a motion to dismiss for lack of standing, 'we accept as true all well-pleaded fact[s] . . . and indulge all reasonable inferences' in the plaintiff[s'] favor." Id. (first alteration and omission in original) (quoting Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012)). "Because no class was certified below, our review is limited to whether [the named plaintiffs have] standing." Id.

"To satisfy th[e] standing requirement, a plaintiff must sufficiently plead three elements: injury in fact, traceability, and redressability." Id.; see, e.g., TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021). "An 'injury in fact' is 'an invasion

- 9 -

of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not conjectural or hypothetical."'" Kerin, 770 F.3d at 981 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (citations omitted)); see, e.g., TransUnion, 141 S. Ct. at 2203. Traceability "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." Katz, 672 F.3d at 71; see, e.g., Lujan, 504 U.S. at 560. And redressability requires the plaintiff to "show that a favorable resolution of her claim would likely redress the professed injury." Katz, 672 F.3d at 72; see, e.g., Lujan, 504 U.S. at 561, 568-71.

Importantly, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." TransUnion, 141 S. Ct. at 2208.

We stress that the standing inquiry is distinct from the determination of whether the plaintiffs' claims have merit; "standing in no way depends on the merits of the plaintiff[s'] contention that particular conduct is illegal." Hochendoner, 823 F.3d at 734 (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)).

### III.

We first consider the plaintiffs' standing to pursue monetary relief. The complaint alleges only economic injury in the form of overpayment. In addition to statutory and common law

- 10 -

claims explicitly based on misrepresentations, the complaint includes several claims pursuant to state statutes creating implied warranties of merchantability. These statutes are modeled on Uniform Commercial Code ("UCC") section 2-314, which provides, inter alia, that "[g]oods to be merchantable must . . . conform to the promise or affirmations of fact made on the container or label if any." U.C.C. § 2-314(2) (Am. L. Inst. & Unif. L. Comm'n 1977); see, e.g., Alaska Stat. § 45.02.314 (adopting similar language). The plaintiffs' counsel explained during oral argument that they view their claims under these statutes as "essentially . . . fraudulent inducement claim[s] under the UCC," and Evenflo's counsel agreed that these counts are "wrapped up in the same economic harm analysis" as the plaintiffs' other claims. We consider these claims together with the plaintiffs' other claims sounding in misrepresentation. In keeping with the plaintiffs' characterization of their claims, our ultimate holding that the plaintiffs have standing to pursue monetary relief on these counts is limited to the degree to which the plaintiffs seek redress for economic injuries resulting from Evenflo's misrepresentations, rather than any other potential breach of warranty.

Evenflo attacks both the cognizability of overpayment as an injury in the absence of physical or emotional harm and the plausibility of the plaintiffs' pleading of that injury in this case. We consider both arguments in turn.

- 11 -

A.

We first address Evenflo's more sweeping argument: that "where a plaintiff is not actually injured by an allegedly unsafe product, she does not have standing to pursue a claim for damages." We disagree. This court has repeatedly recognized overpayment as a cognizable form of Article III injury. See Gustavsen v. Alcon Lab'ys, Inc., 903 F.3d 1, 7-9 (1st Cir. 2018); In re Asacol Antitrust Litig., 907 F.3d 42, 47 (1st Cir. 2018) (recognizing "injury in the form of lost money fairly traceable to an allegedly unlawful supra-competitive price"); In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 190 (1st Cir. 2009) (recognizing "overpayment [as] a cognizable form of injury").

Gustavsen illustrates that overpayment for a product -- even one that performs adequately and does not cause any physical or emotional injury -- may be a sufficient injury to support standing. There, this court concluded that a group of consumers had plausibly pleaded a concrete injury by alleging that they had overpaid for eyedrops as a result of bottles that dispensed larger than necessary drops. 903 F.3d at 7-9. The consumers did not claim, for standing purposes, that the eyedrops failed to perform or caused them any physical or emotional harm; they relied entirely on the allegation that, were the bottle more efficiently designed, they would have spent less money on the product. See id.

Evenflo seeks to distinguish Gustavsen by characterizing it as involving "the loss of a product that a company forced [the plaintiffs] to waste." But Gustavsen did not turn on the fact that the plaintiffs were wasting portions of a consumable product; the court recognized that the plaintiffs had sufficiently pleaded an injury in the form of "an out-of-pocket loss" of money. Id. at 7. The plaintiffs assert the same type of injury here. That the mechanics underlying that injury are somewhat different in this case -- a one-time overpayment for a durable product, rather than repeated overpayments for a consumable good -- does not undercut the concreteness of the alleged economic harm.

Kerin also does not undercut the plaintiffs' standing here. The plaintiff there did advance an argument that he had been injured by overpaying for a product, but did not argue that the source of the injury was a misrepresentation. See 770 F.3d at 983-84, 984 n.3. The plaintiff's purported injury instead rested entirely on allegations that the product -- which had been approved as to safety against the alleged risk by state regulators -- was defective, or at least unsafe, as a result of vulnerability to lightning strikes, without any argument that the product's manufacturer had misrepresented its quality. See id. at 983-84. This court held that, because the purported harm rested entirely on a purported risk of future injury ruled out by regulatory authorities, the plaintiff's failure to allege "facts sufficient

- 13 -

to assess the likelihood of future injury" or establish that the product would be the cause of any damage rendered "the alleged risk of harm . . . too speculative to give rise to a case or controversy." Id. at 985; see id. at 983-85; see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (explaining that plaintiffs asserting injury based on risk of future harm bear burden of showing "injury is not too speculative for Article III purposes" (quoting Lujan, 504 U.S. at 565 n.2)). In contrast, the plaintiffs here do not rely on a risk of future injury as grounds for economic loss; instead, they argue that they overpaid (or purchased the product at all) because of Evenflo's past misrepresentations.

Our conclusion that the plaintiffs have standing as to these claims is consistent with precedent from other circuits addressing similar allegations.

Multiple Second Circuit decisions have determined that plaintiffs had standing based on overpayment due to a defendant's false or misleading statements. See Langan v. Johnson & Johnson Consumer Cos., 897 F.3d 88, 92 (2d Cir. 2018) (finding standing where plaintiff alleged she paid more for product based on purported misrepresentation); John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 736 (2d Cir. 2017) (finding standing on an overpayment theory where the plaintiff purchased prepackaged groceries labeled and priced as being heavier than they really

were); <u>Axon</u> v. <u>Fla.'s Nat. Growers, Inc.</u>, 813 F. App'x 701, 703-04 (2d Cir. 2020) (finding standing where the plaintiff "suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury -- paying a premium -- as a result").

Although the Third Circuit has, in several decisions cited by Evenflo, rejected plaintiffs' efforts to invoke overpayment injuries in cases involving allegedly misleading marketing where the plaintiffs did not suffer any physical injury, its decisions have emphasized the plaintiffs' failure to plausibly plead such an injury. <u>See, e.g.,</u> <u>In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.</u>, 903 F.3d 278, 282-83, 285-90 (3d Cir. 2018). We conclude that the plaintiffs in this case have adequately pleaded the injury.

The Fifth Circuit, in <u>Cole</u> v. <u>General Motors Corp.</u>, 484 F.3d 717 (5th Cir. 2007), held that purchasers of vehicles with allegedly defective airbag systems that could inadvertently deploy had standing to sue even though their airbags had never actually inadvertently deployed. <u>See</u> <u>id.</u> at 721-23. The court concluded that each plaintiff had suffered an economic injury based on the "difference between what they contracted for and what they actually received" -- an economic injury that manifested "at the moment [each plaintiff] purchased a [vehicle] because each [vehicle] was defective." <u>Id.</u> at 722-23. The complaint here alleges analogous

- 15 -

economic injuries that manifested at the moment of purchase because each purchase was allegedly the product of misrepresentations, regardless of whether any physical injury ultimately resulted.[1]

The Sixth Circuit, too, recognizes that a "[p]laintiff['s] allegation that [she] suffered a monetary loss by paying more for [a product] because of the [defendant's] misrepresentation establishes a cognizable injury." Loreto v. Procter & Gamble Co., 515 F. App'x 576, 581 (6th Cir. 2013).

The Seventh Circuit has also concluded that an overpayment injury is cognizable for standing purposes. See In re Aqua Dots Prods. Liab. Litig., 654 F.3d 748, 750-51 (7th Cir. 2011). Aqua Dots held that a group of parents who had bought, but whose children had not been injured by, a defective toy had standing to sue based on a "financial [injury]: they paid more for the toys than they would have, had they known of the risks the [toys] posed to children." Id. at 751. While the plaintiffs in

---

[1] Evenflo relies on the Fifth Circuit's decision in Rivera v. Wyeth-Ayerst Laboratories, 283 F.3d 315 (5th Cir. 2002), which concluded that a group of patients lacked standing to sue over alleged defects -- and the defendant's failure to warn of the alleged defects -- in a medication where the plaintiffs did not claim that the medicine had "caused them physical or emotional injury, was ineffective as a pain killer, or ha[d] any future health consequences." Id. at 319. As the Fifth Circuit explained in Cole, however, the Rivera plaintiffs "did not assert economic harm emanating from anything other than potential physical harm," Cole, 484 F.3d at 722-23; see Rivera, 283 F.3d at 319-21; cf. Kerin, 770 F.3d at 983, unlike the plaintiffs here, whose complaint alleges that they were injured by Evenflo's misrepresentations. As a result, Cole presents the better analogy for this case.

this case pursue misrepresentation claims, rather than the products liability claims raised in Aqua Dots, see id. at 750-51, the injury is analogous, as the complaint here alleges that the plaintiffs paid more than they would have if Evenflo had not misrepresented its products.

Eighth Circuit precedent less clearly favors the plaintiffs but is ultimately consistent with their theory of standing. That circuit has held that "plaintiffs claiming economic injury do not have Article III standing in product defect cases unless they show a manifest defect." Johannessohn v. Polaris Indus. Inc., 9 F.4th 981, 988 (8th Cir. 2021) (finding no standing where plaintiffs sought to rely on overpayment theory of injury but did not plead that every product demonstrated the alleged defect). The plaintiffs' case sounds in misrepresentation rather than products liability, however. And the Eighth Circuit has also held that, even if the defect must manifest to support standing, it need not necessarily cause any physical injury; for this reason, consumers who had purchased pipes susceptible to cracking could claim standing based on that defect when the pipes cracked but did not actually leak. In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 608-09, 616-17 (8th Cir. 2011). While the plaintiffs here do not assert that every Big Kid they purchased exhibited a defect, the complaint does allege that Evenflo's

misrepresentations applied to and influenced each purchase.[2]  This reliance on misrepresentation distinguishes this case from the products liability actions in which the Eighth Circuit has found standing lacking for want of injury.

A line of Ninth Circuit decisions holds that "[i]n a false advertising case, plaintiffs [have standing] if they show that, by relying on a misrepresentation on a product label, they 'paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so.'"  Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015) (quoting Hinojos v. Kohl's Corp., 718 F.3d 1098, 1104 n.3 (9th Cir. 2013)); accord, e.g., Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595 (9th Cir. 2012), overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022).[3]

---

[2] This reliance on an alleged misrepresentation distinguishes this case from O'Neil v. Simplicity, Inc., 574 F.3d 501 (8th Cir. 2009), on which Evenflo relies.  There, the plaintiffs, who had purchased an allegedly defective crib from the defendant, did not allege that the defendant had misrepresented its product -- only that some cribs had exhibited a defect, although theirs had not.  See id. at 503-04.  Because the crib had not failed to perform, the court held that the plaintiffs had not been injured.  See id.  Here, the plaintiffs' injury stems from the misrepresentations, not a defect in the Big Kid.

[3] Evenflo cites the Ninth Circuit's decisions in McGee v. S-L Snacks National, 982 F.3d 700 (9th Cir. 2020), and Birdsong v. Apple, Inc., 590 F.3d 955 (9th Cir. 2009), in support of its argument that "where a plaintiff is not actually injured by an allegedly unsafe product, she does not have standing to pursue a claim for damages."  But the court in both cases noted that overpayment as a result of misrepresentations by a defendant could create a cognizable Article III injury before determining that the

Finally, the Eleventh Circuit has held that a "person experiences an economic injury" that "qualifies as a concrete injury" for standing purposes "when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain." Debernardis v. IQ Formulations, LLC, 942 F.3d 1076, 1084 (11th Cir. 2019). The Debernardis plaintiffs sought damages related to their purchase of allegedly adulterated dietary supplements; they did not allege that "the supplements failed to perform as advertised" or inflicted physical harm, but instead asserted that "[b]ecause the supplements had no economic value, each plaintiff paid an 'unwarranted amount' to purchase the supplements." Id. at 1082, 1085-86. Evenflo seeks to distinguish Debernardis on the grounds that the supplement purchasers alleged that the adulterated products were worthless, see id. at 1084-86, but this distinction makes no difference in the standing inquiry. While the Eleventh Circuit did discuss the supplements' alleged worthlessness, it did not state, or even imply, that a diminution -- rather than a complete loss -- in value would not constitute a concrete injury. See id. On the contrary, it observed that when a "product retains some value," a plaintiff's "damages are less than the entire purchase price" -- but that

---

plaintiffs had not alleged any such misrepresentations. See McGee, 982 F.3d at 706-07; Birdsong, 590 F.3d at 961-62. The plaintiffs here have done so.

- 19 -

plaintiff is nonetheless injured.  Id. at 1084.  And, in any event, a requirement that plaintiffs allege that a product is worthless in order to invoke an overpayment injury is irreconcilable with the rule that "a relatively small economic loss -- even an 'identifiable trifle' -- is enough to confer standing."  Katz, 672 F.3d at 76 (quoting Adams v. Watson, 10 F.3d 915, 924 (1st Cir. 1993)).

Evenflo, supported by its amici, argues that this body of precedent recognizing overpayment injuries is in tension with the Supreme Court's recent decisions in Spokeo v. Robins, 578 U.S. 330 (2016), and TransUnion.  Those decisions examined the concreteness requirement for injury in fact, reaffirming that the injury must be "real, and not abstract."  TransUnion, 141 S. Ct. at 2204 (quoting Spokeo, 578 U.S. at 340); see id. at 2204-07; Spokeo, 578 U.S. at 340-43.  Contrary to Evenflo's argument, the decisions made clear that monetary harms such as those alleged here fall firmly on the real, concrete side of the divide. TransUnion in fact described "monetary harms" as "traditional tangible harms" that "readily qualify as concrete injuries under Article III," and contrasted such harms with more abstract -- although still concrete -- forms of injury, such as "reputational harms, disclosure of private information, and intrusion upon seclusion."  141 S. Ct. at 2204.  Nothing in TransUnion indicated that some monetary harms are concrete while others are not; the

- 20 -

Court there held that properly pleaded monetary harms -- like those asserted by the plaintiffs here -- are sufficiently concrete, as compared to other, nonmonetary forms of injury, which may or may not be concrete. See id.; see also Gustavsen, 903 F.3d at 8 (explaining that overpayment injuries involve "actual economic loss, which is the prototypical concrete harm," even after Spokeo). TransUnion and Spokeo support the plaintiffs' standing.

B.

We turn to Evenflo's argument that the complaint does not allege sufficient facts to plausibly demonstrate that, as a result of Evenflo's misrepresentations, the plaintiffs spent more money than they otherwise would have. See Hochendoner, 823 F.3d at 731. In conducting this "context-specific" plausibility inquiry, we "'[must] draw on [our] judicial experience and common sense' . . . [and] read [the complaint] as a whole." García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (first alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). We conclude that, read as a whole, the complaint's allegations satisfy the plausibility standard.

The complaint typically alleges that "[h]ad [the plaintiffs] known about the defective nature of Evenflo's Big Kid booster seat[], [they] would not have purchased the seat, would have paid less for it, or instead would have purchased one of many

safer available alternatives."[4] The references to "know[ing] about the defective nature" of the Big Kid are fairly read in the context of the complaint to refer to how the plaintiffs would have acted were it not for Evenflo's misrepresentations, and Evenflo does not argue otherwise. Instead, it contends that these allegations fall short of plausibly demonstrating any financial injury.

Evenflo raises doubts about the plausibility of the purported injury under each of the plaintiffs' proposed alternative courses of action. First, it argues that the plaintiffs could not plausibly "forgo buying [any] car seat, given that the use of a car seat is required by law in each state where the [p]laintiffs reside." But the complaint alleges that booster seats are meant to be used only when children outgrow other models of car seat (some of which can "fit children up to 90 pounds") and that Evenflo's marketing the seat as appropriate for smaller children over thirty pounds presented the product as safe for use

---

[4]    For a small number of plaintiffs, the complaint omits the reference to a safer alternative, stating only that the plaintiffs would not have purchased the Big Kid or would have paid less for it were it not for the misrepresentations. We consider these plaintiffs' standing alongside that of the other plaintiffs for two reasons. First, purchasing an alternative seat is an obvious step these plaintiffs might have taken if they chose not to purchase the Big Kid, and so the cost of doing so might still bear on their standing. Second, as discussed below, we see the reference to a safer alternative as the weakest point in the plaintiffs' claim to standing. Considering these plaintiffs alongside the others works to Evenflo's benefit -- though we ultimately conclude that the plaintiffs have plausibly pleaded their standing.

(and purchase) sooner than it actually was, making it reasonable to infer that parents could have continued using other models rather than choosing to buy a new seat.

Next, Evenflo attacks the plaintiffs' claim that they might have paid less for the Big Kid for offering no "measure" or "basis" for the decreased price. But it is a reasonable inference that, if Evenflo had not marketed the Big Kid as safe for children as small as thirty pounds and as side impact tested, the product would have commanded a lower price, allowing the plaintiffs to pay less for it.[5] At this stage of the litigation, that inference

---

[5] In Gustavsen, this court noted that the plaintiffs had cited "scientific studies and the admission of a marketing executive" in arguing that, were eyedrop bottles more efficiently designed, the plaintiffs' costs would decrease. 903 F.3d at 8. But Gustavsen did not establish a bright-line rule that such supporting materials are necessary for pleading this type of injury, and it emphasized their existence because of the "unusual" economic theory advanced by the plaintiffs, "in which a large number of companies independently for[went] what seem[ed] like a profit maximizing opportunity of lowering marginal costs." Id. The inference in this case -- that a loss of favorable marketing claims would make a product less marketable -- is much more straightforward.

Lee v. Conagra Brands, Inc., 958 F.3d 70 (1st Cir. 2020), on which Evenflo also relies in support of its argument that the complaint must quantify the plaintiffs' injury, noted that the plaintiff, who alleged overpayment based on a misleading product label, had cited "several studies" in her pleadings to support her theory of harm. Id. at 80. Lee, however, concerned the requirements for pleading injury under a Massachusetts state statute, not Article III, and, in any event, did not indicate that such studies are always required. See id. at 80-81. The relevant question under Article III remains whether the complaint alleges sufficient facts to "plausibly demonstrate [the plaintiffs']

suffices to support the plaintiffs' standing even without quantification of the change in market value.

Finally, Evenflo highlights the plaintiffs' allegation that, were it not for Evenflo's misrepresentations, they may have purchased a safer alternative seat. It points out that the complaint does not allege that such alternatives would have been cheaper -- and in fact alleges that the Big Kid was roughly $10 cheaper than its chief competitor. This argument has some force, but we conclude that, at the pleading stage, it does not defeat the plaintiffs' standing. Cf. Axon, 813 F. App'x at 704 (recognizing injury even where the plaintiff "fail[ed] to identify the prices of competing products to establish the premium that she paid"). Given that purchasing a different seat is only one of the three alternative courses of action described in the complaint and the possibility that a cheaper alternative exists, the complaint, taken as a whole, plausibly supports the plaintiffs' argument that Evenflo's misrepresentations caused them to overpay.

Evenflo also faults the plaintiffs for "offer[ing] no theories of how damages could be measured"; although it concedes that "[a] precise amount of damages need not be pleaded," it asserts that the plaintiffs must at least offer "the formula" for measuring damages. But at the pleading stage, to demonstrate

_____

standing." Gustavsen, 903 F.3d at 7 (quoting Hochendoner, 823 F.3d at 731).

Article III standing, plaintiffs need not quantify or offer a formula for quantifying their injury. See, e.g., TransUnion, 141 S. Ct. at 2211 (recognizing possibility of "an actual harm that . . . is not readily quantifiable"); García-Catalán, 734 F.3d at 103 (emphasizing that the plausibility standard "does not demand 'a high degree of factual specificity'" in the context of a motion to dismiss under Rule 12(b)(6) (quoting Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012))).

We note that the plaintiffs' allegations readily satisfy the remaining requirements of traceability and redressability. Indeed, Evenflo makes no argument to the contrary. The complaint alleges that the plaintiffs overpaid because of Evenflo's misrepresentations, making their injury traceable to the challenged conduct. See, e.g., Katz, 672 F.3d at 76-77. And monetary relief would compensate them for their injury, rendering the injury redressable. See, e.g., Gustavsen, 903 F.3d at 9.

As to arguments going to whether a claim is stated -- for instance, Evenflo's assertions that its statements were not false, misleading, or inconsistent with regulatory requirements -- they are not properly before us on appeal. See Hochendoner, 823 F.3d at 734 (distinguishing between inquiries under Rules 12(b)(1) and 12(b)(6)).

As the case proceeds, the plaintiffs will bear the burden of substantiating their alleged injuries, and Evenflo may

challenge their success in doing so.  See, e.g., Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-64 (1st Cir. 2001) (discussing different forms of jurisdictional challenges).  Evenflo raised a variety of other arguments for dismissal before the district court which that court did not reach.  We leave it for the district court to consider those arguments in the first instance.  See, e.g., Hochendoner, 823 F.3d at 735 (remanding case for district court to consider alternative bases for dismissal).

IV.

The plaintiffs' briefs do not address their standing to pursue declaratory relief, and so they have waived any argument on that point.  See, e.g., FinSight I LP v. Seaver, 50 F.4th 226, 236 (1st Cir. 2022) (argument "presented in conclusory fashion" is waived).

"Standing for injunctive relief depends on 'whether [the plaintiff is] likely to suffer future injury . . . .'"  Laufer v. Acheson Hotels, LLC, 50 F.4th 259, 276 (1st Cir. 2022) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).  Nothing in the plaintiffs' complaint suggests any possibility of future harm; for example, the complaint does not allege that any plaintiff intends to purchase a Big Kid in the future.  The plaintiffs' assertions about their past behavior do not plausibly allege any likelihood of relying on Evenflo's advertising or purchasing Big Kids in the future, and so there is no impending future injury

that an injunction might redress. The plaintiffs argue that this reasoning would allow Evenflo to "continue falsely marketing its Big Kid seats to parents and grandparents . . . who will continue to purchase them because of Evenflo's false statements." But a hypothetical future injury to other unnamed "parents and grandparents" does not give these plaintiffs standing.

V.

Finally, the plaintiffs request that we "amend, or direct the district court to amend, the judgment to provide for dismissal without prejudice."[6] Although Evenflo's motion to dismiss requested that the district court "dismiss[] the [complaint] . . . with prejudice," the district court's decision and order granting the motion did not state whether it was to operate with or without prejudice. The accompanying "Judgment in a Civil Case" form signed by the court's deputy clerk entered "[j]udgment for the defendant" "[i]n accordance with" the court's decision and order.

The plaintiffs correctly point out that "a dismissal for lack of Article III standing must operate without prejudice." Hochendoner, 823 F.3d at 736 (emphasis added). Given the ambiguity in the district court's order, we "direct the district court, on

---

[6] Evenflo argues that the plaintiffs should not be granted leave to amend their complaint, but the plaintiffs do not appear to request that form of relief on appeal.

remand, to clarify its judgment to reflect that the judgment is to operate without prejudice" to the extent we affirm the dismissal for lack of standing.[7]  Id.

VI.

We affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.  All parties shall bear their own costs on appeal.

---

[7]    Evenflo argues that the plaintiffs waived, or at least forfeited, any argument in favor of dismissal without prejudice by not raising it before the district court.  But it is far from clear that the district court did dismiss with prejudice.  And, in any event, the rule that dismissal for lack of standing must be without prejudice reflects the fact that a court lacks Article III jurisdiction "to enter a judgment on the merits," Hochendoner, 823 F.3d at 736, and accordingly implicates "a constitutional requirement that can never be waived," Unión Internacional UAW, Local 2415 v. Bacardí Corp., 8 F.4th 44, 52 n.5 (1st Cir. 2021) (citing Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 35 (1st Cir. 2020)).